**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PATRICIA BOSTON,                 Case No. 1:10-cv-408

     Plaintiff,                      Weber, J.
                                    Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Patricia Boston filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits (DIB) in September 2005, alleging a disability onset date of September 1, 2003, due to fibromyalgia, depression, knee pain, back pain and poor vision. (Tr. 64-66, 85). She was 50 years old when her insured status expired. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). (Tr. 36-41, 43-45). On September 30, 2008, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Larry A. Temin.

(Tr. 461-535). A medical expert (ME), Arthur Lorber M.D., and a vocational expert (VE), Stephanie Barnes, also appeared and testified at the hearing.

On October 21, 2008, the ALJ entered his decision denying Plaintiff's DIB application. (Tr. 17-29). The Appeals Council denied Plaintiff's request for review. (Tr. 6-8). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2003 through her date last insured of September 30, 2007 (20 CFR 404.1571 *et seq.*)

   ……………………..

3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease of the bilateral knees, lumbosacral spine degenerative disc disease, obesity, bilateral carpal tunnel syndrome/ulnar neuropathy, fibromyalgia, affective disorder, and anxiety disorder (20 CFR 404.1521 *et seq.*).

   ……………………..

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.1525, 404.1526).

   ……………………..

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the requirements of work activity as follows: She can lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk up to 4 hours per 8-hour workday, for up to 1 hour at a time with the option to then sit for 2-3 minutes. She can sit up to 8 hours per 8-hour workday, for up to 1 hour at a time with the option to then stand for 2-3 minutes. She can only occasionally stoop, climb

>   ramps/stairs, operate controls with the left lower extremity, or perform work requiring the forceful use of the left lower extremity.  She should not kneel, crouch, crawl, balance, or climb ladders/ropes/scaffolds.  She cannot use her hands for frequent tight gripping or twisting.  The claimant cannot work at unprotected heights or around hazardous machinery.  She is able to understand, remember, and carry out detailed, but not complex, instructions.  The claimant cannot interact with the general public more than occasionally.  Her job should not require more than ordinary and routine changes in work setting or duties, and she cannot make complex work related decisions.

>   ……………………..

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

    ……………………..

7.  The claimant was born on October 15, 1957 and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and404.1569a).

    ……………………..

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 1, 2003, the alleged onset date, through September 20, 2007, the date last insured. (20 CFR 404.1520(g)).

(Tr. 19-28). Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations through September 20, 2007, her date last insured and was therefore not entitled to DIB.[1]

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

---

[1] The pertinent period of time at issue concerns Plaintiff's work abilities and limitations between September 1, 2003 through September 30, 2007. (Tr. 19, 64). To establish her claim for disability benefits, Plaintiff was required to establish that she was disabled on or before September 30, 2007, the date her insured status expired for purposes of Disability Insurance Benefits. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). While Plaintiff was not required to prove she was disabled for a full twelve months *prior* to the expiration of her insured status, she was required to prove "the onset of disability" prior to the expiration of her insured status and that such disability lasted for a continuous period of twelve months. *See Gibson v. Secretary,* 678 F.2d 653, 654 (6th Cir. 1982); 42 U.S.C. § 423(d)(1)(A).

4

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits

5

must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A). In this case, Plaintiff alleges that two errors at the fifth step of the sequential analysis require this Court to reverse the Commissioner's decision. The undersigned agrees.

**B. Specific Errors**

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) improperly dismissing the findings of her treating physician; and 2) failing to properly evaluate and consider her fibromyalgia in accordance with Social Security Rule 99-2p. Upon careful review and for the reasons that follow, the undersigned finds plaintiff's assignments of error to be well-taken.

Plaintiff treated with her family physician, Dick Hines, M.D. from June 28, 2004 through July 21, 2008. (Tr. 394, 397, 420-38). Dr. Hines treated Plaintiff for fibromyalgia, carpal tunnel syndrome, osteoarthritis, ulnar neuropathy, hypertension, degenerative disc disease of the lumbar spine, chronic urinary tract infections, abdominal pain and depression. *Id.*

The record contains three assessments from Dr. Hines regarding Plaintiff's work limitations. (Tr. 393-404). He first completed a questionnaire for the county in December 2005, in which he reported Plaintiff's diagnoses as fibromyalgia, carpal tunnel syndrome, degenerative disc disease and ulnar neurpoathy. (Tr. 397). Dr. Hines further reported the presence of more than 8 out of 18 trigger points for fibromyalgia, an antalgic gait, and bilateral median and ulnar nerve sensory neuropathy changes. (Tr.

397). Dr. Hines opined that Plaintiff was "significant[ly]" impaired in prolonged standing/walking and bending, stooping, lifting, and grasping. (Tr. 398).

Dr. Hines provided another opinion for the county on July 21, 2006, wherein he reported reduced lumbar range of motion, edema, and trigger points in both trapezius muscles and across Plaintiff's low back. (Tr. 394-395). Dr. Hines opined that Plaintiff should not stand more than ten minutes at a time, her ability to walk distances was very limited, she should not lift more than ten pounds, and she was unable to bend or stoop. (Tr. 395).

Finally, in April 2008, Dr. Hines completed a physical RFC assessment at the request of Plaintiff's attorney. Dr. Hines found that Plaintiff could stand for 20 minutes at one time, sit for 30 minutes at one time, and walk for less than one block before needing to stop and rest. (Tr. 402). Dr. Hines further indicated that Plaintiff could sit and stand/walk for about two hours each during an eight hour workday. (Tr. 401). Dr. Hines also reported that Plaintiff must be permitted to alternate positions as needed and would require unscheduled breaks. (Tr. 402).

Despite Dr. Hines' findings, the ALJ relied heavily on the hearing testimony of Dr. Lorber, the orthopedic medical expert, in formulating Plaintiff's RFC. (Tr. 26). Dr. Lorbor testified that Plaintiff could perform the lifting requirements of light work, could stand and walk for four hours each workday, but no more than one hour at a time, and sit for eight hours each workday, but not more than one hour at a time. (Tr. 513). Notably, Dr. Lorbor testified that he believed Dr. Hines' limitations were supported by the evidence, with the exception of his sitting limitation. (Tr. 512). As outlined above, Dr. Hines' most recent assessment limited Plaintiff to sitting for a total of two hours in an eight-hour work day. (Tr. 402-04, 512). However, Dr. Lorbor testified that Dr. Hines'

7

sitting limitation is unsupported, and in his opinion, Plaintiff is able to perform "unlimited sitting." (Tr. 512).

The ALJ gave "significant weight" Dr. Lorbor's testimony finding that it was more consistent with the objective medical evidence and was better explained than the residual functional capacity assessments of record. (Tr. 26). The ALJ further found that Plaintiff's treating physicians appeared to rely heavily on her subjective reports of pain, which the ALJ found to be only partly supported by the objective record. (Tr. 26). The ALJ determined that Dr. Hines' other limitations were not consistent with the objective evidence. The ALJ further concluded that Dr. Hines "notes do not contain evidence of any impairment that would be expected to cause such disabling pain." (Tr. 27). Thus, the ALJ afforded "some weight" to Dr. Hines' opinion, to the extent it was consistent with Dr. Lorbor's testimony. The Commissioner contends that the ALJ reasonably rejected Dr. Hines' assessments in light of the lack of objective findings and properly considered the severity of Plaintiff's fibromyalgia. (Doc. 12 at 13-15).

The problem with the ALJ's decision and Commissioner's position is two-fold. First, the ALJ failed to evaluate Plaintiff's fibromyalgia impairment in accordance with Sixth Circuit precedent. Second, the ALJ failed to follow Social Security regulations and the law of the Sixth Circuit in evaluating and weighing Dr. Hines' opinions on Plaintiff's limitations.

The ALJ's reliance on the lack of "objective" evidence to discount Dr. Hines' opinions is inconsistent with Plaintiff's diagnosis of fibromyalgia. Fibromyalgia is a condition that "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Secretary of Health and Human*

*Services*, 854 F.2d 815, 817-820 (6th Cir. 1988).[2] "A person with a condition of fibromyalgia certainly could have serious enough pain to have a disability under the Social Security Act, but the condition does not automatically qualify as a listing level impairment." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 527 (6th Cir. 2003). *See also Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits"). In the context of social security disability cases, fibromyalgia presents particularly challenging issues in determining credibility, RFC, and disability because its symptoms are entirely subjective. *See Rogers v. Commissioner*, 486 F.3d 234, 243 n.3 (6th Cir. 2007). Unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Preston,* 854 F.2d at 820. *See also Rogers*, 486 F.3d at 243-44 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers,* 486 F.3d at 244 (quoting *Preston*, 854 F.2d at 820). As the *Preston* Court explained:

> [F]ibrositis [the term previously used for fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle

---

[2] In *Preston*, the term "fibrositis" was used instead of "fibromyalgia." Currently, the preferred term is fibromyalgia, rather than the older terms fibrositis and fibromyositis. *See* Merck Manual Online Medical Library, http://www.merckmanuals.com/professional/sec04/ ch042/ch042c. html?qt=fibromyalgia&alt=sh (last visited Aug. 19, 2011).

> strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.

854 F.2d at 817-18 (6th Cir. 1988).

A diagnosis of fibromyalgia involves testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials. *See Rogers*, 486 F.3d at 244. Fibromyalgia can be disabling even in the absence of objectively measurable signs and symptoms. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (fibromyalgia is a "disabling impairment" that can qualify an individual for disability payments even though "there are no objective tests which can conclusively confirm the disease."); *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.").

A treating physician's opinion that a claimant is disabled by fibromyalgia may be accorded controlling weight if the physician has treated the claimant's symptoms over a lengthy period of time and excluded other possible diagnoses, and if the finding of disability is not contradicted by other substantial evidence of record. *See Preston*, 854 F.2d at 820.

In the instant case, it is undisputed that Plaintiff suffers from fibromyalgia. Plaintiff's treating physicians, Drs. Foad and Dr. Hines have both diagnosed Plaintiff as suffering from fibromyalgia. (Tr. 394, 397, 400, 442).[3] Dr. Lorbor, the medical expert, did not challenge the fibromyalgia diagnosis and agreed that Plaintiff suffered from fibromyalgia-related pain. (Tr. 518-19). The ALJ also accepted Plaintiff's diagnosis of fibromyalgia and made a factual finding at Step 2 of the sequential evaluation process that Plaintiff's fibromyalgia is a severe impairment under the Social Security Regulations. (Tr. 19, Finding #3, citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Furthermore, Dr. Hines' progress notes document Plaintiff's consistent complaints of pain, achiness and numbness, sleep problems and/or fatigue and depression, and also indicate the presence of trigger points in the lumbar and shoulder regions - all classic symptoms associated with the diagnosis of fibromyalgia. (Tr. 421-438). *See Rogers*, 486 F.3d at 244; *Preston*, 854 F.2d at 820. Dr. Hines prescribed several narcotics in order to control Plaintiff's pain, insomnia and depression including Vicodin, Percocet, Elavil, Lyrica, Oxycontin, Ambien, Effexor, Cymbalta and Wellbutrin. *Id*. Dr. Hines' treatment notes also indicate that he referred Plaintiff to a pain management specialist and a rheumatologist for further evaluation. (Tr. 423).

In light of the foregoing, the ALJ's decision to disregard Dr. Hines' opinion based on the lack of "objective" evidence is without substantial support in the record. *Preston*, 854 F.2d at 820. *See also Swain v. Commissioner of Social Security*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003) (since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the treating physician's opinion must necessarily

---

[3] Plaintiff was formally diagnosed with fibromyalgia in February 2001 by Salem Foad, M.D., Plaintiff's treating rheumatologist at the time. (Tr. 442).

depend upon an assessment of the patient's subjective complaints). The ALJ failed to discuss, let alone apply, the correct standard for assessing Plaintiff's fibromyalgia in his decision. Rather, the ALJ emphasized the lack of objective findings and "normal" clinical findings. (Tr. 23-26). The lack of objective findings to support the fibromyalgia diagnosis does not undermine the limitations ultimately imposed on Plaintiff by her treating physician and are wholly consistent with Plaintiff's diagnosis. Where Plaintiff's treating physician, rheumatologist, and the medical expert have diagnosed and/or confirmed the diagnosis of fibromyalgia, and the medical research indicates that there are a lack of objective tests to prove this condition, it was unreasonable for the ALJ to require objective findings. *Rogers*, 486 F.3d at 243-44; *Preston*, 854 F.2d at 819. The objective and "normal" findings cited by the ALJ have little relevance to Plaintiff's diagnosis of fibromyalgia or to Dr. Hines' assessments of Plaintiff's functioning based thereon. *Rogers*, 486 F.3d at 245; *Preston*, 854 F.2d at 820. These findings do not constitute substantial evidence in support of the ALJ's rejection of the treating physician's opinions in favor of the medical expert testimony. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983) (Clearly established law that opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome properly supported opinion of a physician who has treated a claimant over a period of years).

In addition, the ALJ failed to follow Social Security regulations and Sixth Circuit law in evaluating and weighing Dr. Hines' opinions on Plaintiff's limitations. The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not

12

inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a treating physician assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).

In this case, the ALJ failed to evaluate Dr. Hines' assessments in accordance with Sixth Circuit precedent and the Social Security regulations and give "good reasons" for rejecting the treating physician's opinions. While the ALJ specifically declined to give controlling weight to Dr. Hines' opinions, there is no indication from the ALJ's decision that he considered the regulatory factors in determining the weight to afford Dr. Hines' opinions, including the length, frequency, nature, and extent of the treatment relationship and the consistency of Dr. Hines' conclusions. *Blakley*, 581 F.3d at 406.

The ALJ failed to assign any weight to Dr. Hines' opinions although certain factors support affording Dr. Hines' opinions great weight.

Notably, Dr. Hines treated Plaintiff for nearly four years. The record contains Dr. Hines' progress notes from July 2006 through July 2008, which document Dr. Hines' clinical examination, tests, referrals and treatment for Plaintiff's fibromyalgia, osteoarthritis, carpal tunnel syndrome, back, knee and neck pain, joint pain and tenderness, depression and insomnia. (Tr. 421-438). Dr. Hines' progress notes are also consistent with those from Dr. Foad, Plaintiffs' treating rheumatologist from November 1996 through December 2003. (Tr. 440-51). Dr. Foad treated Plaintiff for osteoarthritis of the knees and low back pain. Dr. Foad also noted the presence of trigger points in plaintiff's low back and shoulder region and diagnosed Plaintiff with fibromyalgia in February 2001. (Tr. 442). Dr. Foad prescribed Narosyn, Vicodin, Lorcet, Celebrex and Darvocet for Plaintiff's pain and injected trigger points in Plaintiff's low back and left shoulder with steroids. (Tr. 440-442).

Furthermore, Dr. Fritzhand, who consultatively examined Plaintiff in January 2006, noted plaintiff's long history of chronic diffuse pain. (Tr. 181). Dr. Fritzhand reported essentially normal findings, yet made the following determination:

> Based on the findings of this examination, it is very difficult to assess functional impairment in patients with fibromyalgia who have marked subjective complaints with few objective findings in the face of marked depression. The patient does appear capable of performing at least a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carry heavy objects.

(Tr. 181-82).

Additionally, Dr. Lorbor testified at the hearing that he believed the functional limitations found by Dr. Hines were supported by the evidence. (Tr. 512). Although he

14

disagreed with Dr. Hines' two-hour sitting limitation, he also testified that Plaintiff's fibromyalgia could cause profuse pain in multiple areas of the body, including the lower body. (Tr. 519).

In light of the foregoing, the ALJ's rejection of Dr. Hines' opinion is inconsistent with the legal standards applicable for determining the weight to a treating physician's opinion in fibromyalgia cases and lacks substantial support in the record. *Blakley*, 581 F.3d at 407. Although the ALJ was not bound by Dr. Hines' opinion, the ALJ was obligated to articulate "good reasons" based on the evidence of record for not giving weight to the treating physician's opinion. *Wilson*, 378 F.3d at 544. He failed to do so in this case. Accordingly, the ALJ's decision is not supported by substantial evidence and should be reversed. Plaintiff's first assignment of error should be sustained.

**2. Evaluation of Fibromyalgia**

Plaintiff's second assignment of error asserts that the ALJ failed to consider the severity of Plaintiff's fibromyalgia in assessing her RFC in accordance with agency regulations, including SSR 99-2p.[4] As detailed above, the ALJ improperly relied on a lack of objective medical evidence in rejecting Dr. Hines' assessment of Plaintiff's functional limitations from fibromyalgia. In addition to this error, the undersigned finds

---

[4]
Social Security Ruling (SSR) 99-2p, which deals with evaluating chronic fatigue syndrome (CFS), notes that an overlap of symptoms exists between CFS and fibromyalgia. SSR 99-2p, fn.3. This Ruling indicates that CFS is not a listed impairment and as such "an individual with CFS alone cannot be found to have an impairment that meets the requirements of a listed impairment; however, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist." *Fleming v. Astrue*, No. 1:09cv373, 2010 WL 649742, at * 4 (N.D. Ohio Feb. 19, 2010).

that the ALJ's RFC analysis fails to properly address Plaintiff's fibromyalgia in accordance with agency regulations and controlling Sixth Circuit precedent.

In determining Plaintiff's RFC, the regulations require the ALJ to properly consider all of Plaintiff's impairments and provide a narrative discussion describing how the evidence supports each conclusion. 20 C.F.R. §§1520(c) and 404.1545; SSR 96-8p. Here, the ALJ accepted Plaintiff's diagnosis of fibromyalgia and found it to be a severe impairment at Step 2 of the sequential evaluation process. (Tr. 19). Despite these findings, there is no indication from the ALJ's decision that he properly considered the severity of Plaintiff's fibromyalgia and any resulting functional limitations associated with fibromyalgia in assessing Plaintiff's RFC.

Notably, the ALJ's decision fails to include any discussion or analysis of Dr. Hines' progress notes documenting Plaintiff's consistent complaints of pain, achiness and numbness, sleep problems and/or fatigue, depression, tenderness on examination and the presence of trigger points in the lumbar and shoulder regions, all of which are classic symptoms associated with the diagnosis of fibromyalgia. The ALJ also fails to note that Plaintiff has been prescribed several narcotics in an attempt to control her pain, including Vicodin, Percocet, Elavil, Lyrica and Oxycontin and has also been treated with epidural steroid injections and physical therapy. The ALJ's failure to address this evidence, and properly evaluate Plaintiff's fibromyalgia, prevent the Court from engaging in meaningful review of the ALJ's decision. When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs.*, Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)); *see also Sarchet v.*

16

*Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Additionally, in an apparent attempt to question the severity of Plaintiff's fibromyalgia, both the ALJ and the Commissioner note that the requisite trigger points and other symptoms are not clearly documented in the record.[5]  However, as detailed above, progress notes from Dr. Foad and Dr. Hines clearly document signs and symptoms consistent with fibromyalgia, including the presence of trigger points.  More importantly, while this analysis may be relevant for purposes of diagnosing the impairment, it is not relevant for purposes of determining Plaintiff's RFC in light of the ALJ's Step 2 finding that Plaintiff's fibromyalgia constitutes a severe impairment– one

---

[5]

This Court has noted that more recently, physicians have not required a specific number of tender points to diagnose fibromyalgia:

> According to a recent Merck Manual entry, fibromyalgia is "a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe), widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues, as well as muscle stiffness, fatigue and poor sleep."  A diagnosis is based on clinical findings of generalized pain and tenderness, especially if disproportionate to physical findings; negative laboratory results despite widespread symptoms; and fatigue as a predominant symptom.  Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated.  Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, *but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18).*  Patients with only some of the specified features may still have fibromyalgia."

*Lawson v. Astrue*, 695 F. Supp.2d 729, 735 (S.D. Ohio 2010) (Beckwith, J.) (emphasis added) (citing Merck Manual Online Medical Library, http:// www. merck. com (last visited February 22, 2010)).  In the instant case, Dr. Foad diagnosed fibromyalgia noting tenderness in the knees, elbows, shoulders, supra scapular areas and lumbar paraspinal areas at L5 and trigger points in the lower back at L5 bilaterally.  (Tr. 442-43).  Dr. Hines also found tenderness in multiple trigger point areas noting that more than 8 of 18 trigger points.  (Tr. 397).

*Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Additionally, in an apparent attempt to question the severity of Plaintiff's fibromyalgia, both the ALJ and the Commissioner note that the requisite trigger points and other symptoms are not clearly documented in the record.[5]  However, as detailed above, progress notes from Dr. Foad and Dr. Hines clearly document signs and symptoms consistent with fibromyalgia, including the presence of trigger points.  More importantly, while this analysis may be relevant for purposes of diagnosing the impairment, it is not relevant for purposes of determining Plaintiff's RFC in light of the ALJ's Step 2 finding that Plaintiff's fibromyalgia constitutes a severe impairment– one

---

[5]

This Court has noted that more recently, physicians have not required a specific number of tender points to diagnose fibromyalgia:

> According to a recent Merck Manual entry, fibromyalgia is "a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe), widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues, as well as muscle stiffness, fatigue and poor sleep."  A diagnosis is based on clinical findings of generalized pain and tenderness, especially if disproportionate to physical findings; negative laboratory results despite widespread symptoms; and fatigue as a predominant symptom.  Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated.  Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, *but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18).*  Patients with only some of the specified features may still have fibromyalgia."

*Lawson v. Astrue*, 695 F. Supp.2d 729, 735 (S.D. Ohio 2010) (Beckwith, J.) (emphasis added) (citing Merck Manual Online Medical Library, http:// www. merck. com (last visited February 22, 2010)).  In the instant case, Dr. Foad diagnosed fibromyalgia noting tenderness in the knees, elbows, shoulders, supra scapular areas and lumbar paraspinal areas at L5 and trigger points in the lower back at L5 bilaterally.  (Tr. 442-43).  Dr. Hines also found tenderness in multiple trigger point areas noting that more than 8 of 18 trigger points.  (Tr. 397).

which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c).

The Commissioner argues further that Plaintiff's diagnosis alone does not indicate the level of severity of a condition. The Court agrees and expresses no opinion on whether Plaintiff may ultimately be found disabled on the basis of fibromyalgia. Nevertheless, it was erroneous for the ALJ to determine fibromyalgia is a severe impairment which significantly limits Plaintiff's ability to perform basic work activities and then fail to evaluate or consider any functional limitations associated with fibromyalgia. In determining plaintiff's RFC, it was incumbent upon the ALJ to assess the medical evidence to determine not whether Plaintiff has fibromyalgia, but what limitations she suffers as a result and to include those functional restrictions in the RFC assessment.

As noted above, the ALJ is required to properly consider all of Plaintiff's impairments in determining plaintiff's RFC and provide a narrative discussion describing how the evidence supports each conclusion. 20 C.F.R. §§1520(c) and 404.1545; SSR 96-8p. The ALJ failed to do so in this case. Because the ALJ failed to properly consider and evaluate Plaintiff's fibromyalgia, his RFC assessment is not supported by substantial evidence. As such, this matter should be remanded for further proceedings.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand,

18

the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to: (1) carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia and/or carpal tunnel syndrome; (2) properly review the medical evidence and give specific reasons for the weight given to the opinions of Plaintiff's treating physicians;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                           *s/Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| PATRICIA BOSTON, | Case No. 1:10-cv-408 |
| Plaintiff, | Weber, J. |
| | Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE, | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).